IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DIANE PRICE on behalf of J.R.P., a minor, | Civil Action No. 3:09-921-HMH-JRM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff Diane Price ("Ms. Price"), on behalf of J.R.P., her minor son, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying a claim for Supplemental Security Income ("SSI").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff first applied for SSI on J.R.P.'s behalf on December 8, 2003, alleging J.R.P. had been disabled since birth due to acid reflux disease and premature birth. (Tr. 36-37). Plaintiff's application for SSI was denied initially and upon reconsideration in a decision issued May 6, 2005. (Tr. 36-38). Plaintiff's current application for SSI was filed on November 15, 2006, alleging disability since birth due to speech delay and learning disabilities. (Tr. 51, 73-75). The application was denied and Plaintiff requested a hearing before an administrative law judge ("ALJ"). After a hearing held August 12, 2008, the ALJ issued a decision dated November 25, 2008, denying benefits and finding that J.R.P. was not disabled because he did not have an impairment or combination of impairments

that met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. J.R.P. was five years old and a student in grade 4K at the time of the ALJ's decision.

The ALJ found (Tr. 17-22):

1. The claimant was born on [], and is 5 years old (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.924(b) and 416.972).

3. The claimant has the following severe impairments: speech and language delays (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926(a)).

6. The claimant has not been disabled, as defined in the Social Security Act, since November 15, 2006, the date the application was filed (20 CFR 416.924(a)).

On February 23, 2009, the Appeals Council denied Plaintiff's request for review. After submission of purported new evidence, the Appeals Council found on March 26, 2009 that this "new evidence" was already a part of the original record and again denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on April 8, 2009.

The Social Security Act provides that disability benefits shall be available to those persons who are insured for benefits, are not of retirement age, properly apply, and are "under a disability." 42 U.S.C. § 423(a)(1). For a child under the age of eighteen to be considered "disabled," he must demonstrate:

a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).

## MEDICAL RECORD/SCHOOL RECORDS

J.R.P. and his twin[1] were born prematurely. Since July 14, 2006, J.R.P. has been receiving services from the Darlington County Disabilities and Special Needs Board ("DSN Board") based on developmental delays in speech, fine motor, and cognitive skills. An early interventionist provides special instruction to J.R.P. for 45 minutes once a week. Tr. 339.

On September 13, 2006, Lisa Mady, M.S., a school psychologist, evaluated J.R.P. She concluded that J.R.P. had overall adaptive functioning in the low range and poorly developed functioning in language, daily living skills, social skills, and motor development. See Tr. 235-239, 300-303, 309-312.[2]

Dr. Michael J. Lyons, a clinical geneticist, examined J.R.P. on October 11, 2006. Dr. Lyons diagnosed J.R.P. with a speech delay of unknown etiology and noted that J.R.P. had normal motor development and no behavioral concerns. Tr. 313-314.

J.R.P. underwent an evaluation with Rebecca Mussman, M.Ed., an eligibility specialist, and Maria Tolbert, M.A., a school psychologist, at the Carolina Autism Resource and Evaluation Center

---

[1]Plaintiff testified that J.R.P.'s twin has been awarded SSI benefits. Tr. 27.

[2]The Commissioner, in his brief (at 2), cites to a somewhat similar report (Tr. 114-117) that appears to pertain to J.R.P.'s twin. J.R.P.'s first name is sometimes used as a nickname for his twin's name, which may have contributed to this confusion. See Tr. 27 (Plaintiff's testimony as to the name of the two boys), 361, 113-128 (records which appear to be those of J.R.P.'s twin). The transcript in this case also contains numerous duplicate records.

on November 15, 2006. It was determined that J.R.P. did not meet the American Psychiatric Association's criteria for autism. Ms. Tolbert opined, however, that J.R.P. had marked impairment in the use of nonverbal behaviors; a lack of social or emotional reciprocity; and a "delay, or total lack of, the development of spoken language." She noted that J.R.P. had a history of speech delays, aggressive behaviors, and other behavioral difficulties and displayed some characteristics of autism spectrum disorder. Ms. Tolbert concluded that J.R.P. appeared to have a language delay and possibly a behavioral disorder. Tr. 316-320, 361-367.

On January 3, 2007,[3] J.R.P.'s 3K teacher Wendy Stephens, completed a questionnaire for SSA in which she assessed him in the six domains of functionality. Ms. Stephens indicated, with regard to acquiring and using information, J.R.P. had a very serious problem (compared to same-aged children without impairments) understanding and participating in class discussions and in providing organized oral explanations and adequate descriptions. She also opined that he had a serious problem learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions. With regard to attending and completing tasks, Ms. Stephens wrote that J.R.P. had a serious problem focusing long enough to finish assigned activities or tasks and in carrying out multi-step instructions. She indicated that, with regard to interacting and relating with others, J.R.P. had a very serious problem relating experiences and telling stories, introducing and maintaining relevant and appropriate topics of conversation, and using adequate vocabulary and grammar to express thoughts and ideas in everyday conversation. Ms. Stephens noted that J.R.P. exhibited a serious problem using language appropriate to the situation and listener and in taking turns in conversation. In the "Additional Comments" portion of the report, Ms.

---

[3]This report appears to be mistakenly dated January 3, 2006. See Tr. 83.

4

Stephens wrote that J.R.P. was well below grade level especially as to speech and higher order thinking, but he played well with other students and did not have to be redirected any more than other students. She also reported that J.R.P. listened and followed classroom rules, but was very emotional and unable to calm himself in his mother's presence. Tr. 76-83. In an undated statement, Ms. Stephens opined that J.R.P. was weak in expressive and receptive language and had cognitive delays. Tr. 170.

On January 4, 2007, Cynthia Katko, CCC-SLP, a certified speech-language clinician, completed a report regarding J.R.P. based on her assessment performed in September 2006 and the two months of speech therapy which she administered. She noted that at the time of the September 2006 assessment, J.R.P. was practically nonverbal, cried or whined to get his needs met, required verbal and physical prompts with much repetition to complete two-step tasks, did not use a lot of expressive communication, and appeared to have moderately delayed expressive and receptive language. She noted that with therapy, J.R.P. displayed more spontaneous speech, answered a few simple who, what (naming) type questions, and participated well with his peers in group therapy. Ms. Katko noted, however, that even with therapy J.R.P. used only one to two words to request, often grunted for his needs, and could not follow one to two step commands. Tr. 95-96.

On February 16, 2007, Doreen Taylor, M.S., a speech-language pathologist, and LuEtta Harris, a clinical audiologist, performed an evaluation of J.R.P. Ms. Taylor noted that J.R.P. demonstrated good attention, turn-taking, cooperation, eye contact, ability to follow commands, and interaction. She opined that J.R.P. had mildly delayed language skills, average articulation skills, normal voice quality, normal hearing, and speech intelligibility of 75 percent. Ms. Taylor concluded that J.R.P. had mildly delayed receptive and expressive language skills. Tr. 323-324.

In an eligibility determination letter dated February 20, 2007 from the Darlington DSN Board, it was noted that J.R.P. had current delays in communication, adaptive skills, and motor skills, as well as some delays in cognition. Tr. 344-346.

On March 23, 2007 (after reviewing J.R.P.'s records), Dr. Roxanne Marcille, a state agency pediatric consultant, and Dr. Edward Waller, a state agency psychological consultant, opined that J.R.P. did not meet, medically equal, or functionally equal a listed impairment. They found that J.R.P. had "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. No limitations were found in the domains of moving about and manipulating objects, caring for oneself, and health and physical well-being. Tr. 325-330. These assessments were affirmed in May 2007 by Charles M. McKenzie, M.D. and Lisa Klohn, Ph.D. Tr. 331-338.

## DISCUSSION

Plaintiff alleges that the ALJ erred by failing to find that J.R.P. functionally met one of the listings. Specifically, she argues that the ALJ failed to adhere to 20 C.F.R. § 416.926a(e) in determining his degree of limitation in the six functional domains. She also appears to argue that the ALJ failed to properly develop the record at the hearing. The Commissioner contends that the ALJ's decision is supported by substantial evidence[4] and free of legal error.

---

[4]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established
(continued...)

A three-step test is established for purposes of adjudication of a child's SSI benefit claims. The first determination is whether the child is working and performing substantial gainful activity. 20 C.F.R. § 416.924(b). If the child is not working, it must then be determined whether the child suffers from a severe (more than slight or minimal) impairment or combination of impairments. 20 C.F.R. § 416.924(c). If the child suffers from a severe impairment or combination of impairments, it must then be determined whether the child's impairment(s) meet, medically equal, or functionally equal an impairment in the Listing of Impairments ("Listings") under Appendix I to Subpart P of the Administrative Regulations Part 404. 20 C.F.R. § 416.924(d).

The parties do not dispute that at the first step, J.R.P. was not working and that at the second step he had the severe impairments of speech and language delays. Plaintiff does not appear to dispute that J.R.P. does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. At issue is whether J.R.P. had an impairment or combination of impairments that functionally equals the listings.

If a minor's impairments do not meet or medically equal a listing, 20 C.F.R. § 416.926a directs an assessment of whether the "interactive and cumulative effects of all impairments ... including [non-severe impairments]" functionally equal a listing. In making this determination, the regulations require consideration of six "domains," which are "broad areas of functioning intended to capture all of what a child can and cannot do." 20 C.F.R. § 416.926a(b)(1). An impairment is functionally equal to a listed impairment if there is an "extreme" limitation in one of six specific functional "domains" or a "marked" limitation in at least two domains. 20 C.F.R. § 416.926a(a).

---

[4](...continued)
exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

The domains considered are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving around and manipulating objects, (5) caring for oneself, and (6) health and physical well being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). The Commissioner will find that a claimant has a "marked" limitation in a domain when the claimant's impairment or combination of impairments interferes seriously with the ability to independently initiate, sustain, or complete activities. See id. at § 416.926a(e)(2)(i). A "marked" limitation is one that is "more than moderate" but "less than extreme," and may arise when several activities or functions are limited or when only one is limited. See id.

Plaintiff argues that the ALJ erred by relying only on the February 2007 report of Ms. Taylor (the consultative speech-language pathologist) to find that J.R.P. had "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. She asserts that Ms. Taylor's report is not determinative of whether J.R.P. suffered from marked or extreme limitations in these domains. Plaintiff also argues that the ALJ ignored the findings of J.R.P.'s teacher (Ms. Stephens) which indicated that J.R.P. had serious problems in these three domains and that the ALJ failed to reconcile contrary reports from the school psychologist (Ms. Mady) that J.R.P. was poorly developed in language, daily living skills, social skills, and motor development. Additionally, Plaintiff argues that the ALJ failed to consider the impact of J.R.P.'s speech and language delays on his cognitive functioning.

Here, the ALJ does not appear to have fully considered all of the evidence in the record and appears to have found that J.R.P. had less than marked limitations in these three domains based solely on Ms. Taylor's consultative report and that fact that J.R.P. continues in special education services (see Tr. 15). The ALJ discussed some progress (more spontaneous speech) noted by J.R.P.'s speech

therapist (Ms. Katko), but did not appear to consider Ms. Katko's continued findings that J.R.P. did not use but 1-2 words to request, often grunted for his needs, and could not follow 1-2 step commands. Tr. 96. The ALJ does not appear to have considered the portions of the November 2006 autism evaluation which note that J.R.P. had a delay or total lack of development of spoken language (Tr. 317), was exhibiting "severe" receptive and expressive language deficits (Tr. 318), displayed characteristics consistent with an autism spectrum disorder (Tr. 366), had a language delay (Tr. 367), and might have a behavior disorder (Tr. 367).

It is unclear from the decision what weight was given to the January 2007 report by J.R.P.'s speech therapist or why the consultative speech-language evaluation in February 2007 was given greater weight. The Commissioner argues that, contrary to Plaintiff's argument, the ALJ properly considered Ms. Stephen's report because it was not entitled to great weight as Ms. Stephens is not a treating physician and because her report did not support a finding that J.R.P. had marked or extreme limitations in any functional domain.[5]

Although a teacher is not an acceptable medical source and is not entitled to the weight of a treating physician's findings, see 20 C.F.R. § 416.913(d), Social Security Ruling 06-3p, 2006 WL 2329939, provides that non-medical sources, such as teachers and school counselors, are valuable sources of evidence for assessing an individual's functioning because they often "have close contact with the individuals and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time." Id. at *3. The Ruling further explains that in general the ALJ should explain the weight given to opinions from other

---

[5]In doing so, the Commissioner averages scores given by Ms. Stephens in the three domains at issue. Commissioner's Brief at 9. The ALJ, however, did not discuss Ms. Stephens' specific findings as to the three domains at issue. See Tr. 13-14.

9

sources or include a discussion of the evidence that allows a reviewing court to follow the ALJ's reasoning where the evidence may have an effect on the outcome of the case. Id. at *6.

The ALJ appears to have considered some of Ms. Stephens' report concerning J.R.P.'s behavior in finding that his symptoms were not entirely credible (Tr. 14), but did not consider her observations of serious to very serious problems as to certain items within the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others (see Tr. 15) in determining that J.R.P. had "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others.

Additionally, the ALJ does not appear to have provided Plaintiff, who was not represented by counsel at the hearing, with a full and fair hearing. At any hearing, the ALJ has an affirmative duty to the claimant to reach a decision only after a "full and fair" hearing. See Sims v. Harris, 631 F.2d 26 (4th Cir. 1980). The Fourth Circuit has stated:

> While lack of representation by counsel is not by itself an indication that a hearing was not full and fair [], it is settled that where the absence of counsel created clear prejudice or unfairness to the claimant, a remand is proper. . . It is equally settled that in pro se cases, Administrative Law Judges have a duty to assume a more active role in helping claimants develop the record.

Id. at 27-28(citations omitted). See also Walker v. Harris, 642 F.2d 712 (4th Cir. 1981) and Cook v. Heckler, 783 F.2d 1168 (4th Cir. 1986).

In the less than thirty minute hearing, the ALJ explained Plaintiff's right to counsel at length. He, however, does not appear to have properly developed the record as to J.R.P.'s impairments. Although the ALJ asked Plaintiff numerous questions about her marital status, living situation, and other children, as to J.R.P. he merely asked why she felt that J.R.P. "warrants the benefits sought,"

asked her whether there was anything further she'd like to tell him about, and asked her what type of classes she had J.R.P. in the coming school year. Tr. 27 and 29.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to conduct a new hearing and fully consider the evidence of record.

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and 1383(c)(3) and that the case be remanded to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

May 28, 2010
Columbia, South Carolina